# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1001
_____

Norsyn, Inc.,                           *
                                        *
            Plaintiff-Appellant,        *
                                        *    Appeal from the United States
      v.                                *    District Court for the
                                        *    District of South Dakota.
R. M. Desai, Personally and as CEO of   *
Bank of India; Nari C. Pohani,          *
Personally and as President of Pohani   *
Commercial Purchasing Corp.; Robert     *
Easton, Personally and as Managing      *
Director of Charter Oak Asset           *
Management, Inc.,                       *
                                        *
            Defendants-Appellees.       *

_____

Submitted:  October 23, 2003

Filed:  December 10, 2003
_____

Before LOKEN, Chief Judge, LAY and BOWMAN, Circuit Judges.
_____

LAY, Circuit Judge.

      This is an appeal from the district court's order denying the motion of Norsyn, Inc. ("Norsyn") for default judgment and dismissing its complaint without prejudice. The district court also imposed sanctions jointly and separately against Norsyn's

counsel in the amount of the Defendants' attorney fees and costs. We now affirm in part and vacate in part.

## I. BACKGROUND

In January 2002, Norsyn filed a complaint in South Dakota state court against three individuals, naming them personally and in their corporate capacities: R.M. Desai, CEO of Bank of India; Nari C. Pohani, president of Pohani Commercial Purchasing Corporation; and Robert Easton, managing director of Charter Oak Asset Management, Inc. (collectively, "Defendants"). Norsyn's complaint asserted claims of negligence per se, breach of contract, common law fraud, and securities fraud, arising out of a commercial financing agreement.

Following the filing of the complaint, Norsyn's Washington, D.C.-based counsel, David Johnston, attempted to effect service of process by sending a copy of the Summons and Complaint to each of the named Defendants by a private courier service. Defendants received the Summons and Complaint on January 30, 2002, thereby receiving actual notice of Norsyn's action. Near the end of February 2002, Defendants contacted Al Arendt, Norsyn's local counsel, to inquire whether Norsyn intended to take the position that proper service of process had been made. Arendt acknowledged that sending a Summons and Complaint via private courier did not constitute valid service under South Dakota law, and stated that he would "take care of getting proper service accomplished."

Defendants elected not to file a motion in South Dakota state court challenging the sufficiency of Norsyn's service of process. Instead, on February 26, 2002, Defendants removed the action to the United States District Court for the District of

South Dakota[1] pursuant to 28 U.S.C. § 1441(d).[2] Following removal, Defendants neither engaged in motion practice nor filed an answer to Norsyn's complaint, instead opting to await proper service before taking any action. On June 17, 2002, Norsyn filed a motion for default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure, asserting that the entry of such was warranted due to Defendants' failure to file an answer.

By memorandum dated June 20, 2002, the district court notified the parties of its many concerns with the case, characterizing the action as "procedurally chaotic." Specifically, the district court raised serious questions regarding the sufficiency of service, noting that "[y]ou do not start a lawsuit in South Dakota (or anywhere else known to me) by using a carrier [sic] service," and questioned whether the Summons and Complaint were actually delivered to Defendants in light of Norsyn's failure to offer any valid proof of service. In addition, the district court expressed its disfavor with the conduct of Johnston and Arendt in litigating Norsyn's claims, raising the possibility of issuing sanctions against them under Rule 11 of the Federal Rules of Civil Procedure. The district court noted what it perceived to be attempts by Norsyn to extort money from Defendants under threat of criminal prosecution, and also opined that several of the substantive legal arguments advanced by Johnston and Arendt were wholly without merit.

---

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

[2]28 U.S.C. § 1441(d) provides: "[a]ny civil action brought in a State court against a foreign state as defined in [28 U.S.C. § 1603(a)] may be removed by the foreign state to the district court of the United States for the district and division embracing the place where such action is pending." One of the named Defendants, Bank of India, is owned by the State of India and is neither incorporated under United States law nor has its principal place of business in the United States. See 28 U.S.C. § 1603(b). Therefore, removal was proper.

On July 2, 2002, both parties responded to the district court's memorandum. Norsyn remained steadfast in its position that Defendants had either been properly served or voluntarily assumed an obligation to file an answer by removing the action, and further denied that the conduct of Johnston and Arendt was subject to sanctions under Rule 11. For their part, Defendants echoed the concerns articulated by the district court. They argued that Norsyn's attempt at service was defective, and that they were under no obligation to defend the action until proper service was made upon them. Defendants also argued that sanctions against Johnston and Arendt should issue for the reasons set forth by the district court. On July 17, 2002, the district court set the issue of Rule 11 sanctions for a hearing, issuing an Order to Show Cause to Johnston and Arendt.

On July 30, 2002, a hearing was held on the Order to Show Cause, in which Johnston and Arendt were represented by separate counsel. Following the hearing, the district court announced its intention to impose sanctions jointly and severally against Johnston and Arendt in the amount of Defendants' attorney fees and costs to date. On November 6, 2002, after reviewing the parties' submissions, the district court entered a written order awarding sanctions in favor of Defendants in the amount of $10,268.71. By prior written orders, the district court also denied Norsyn's motion for default judgment and dismissed its complaint, *sua sponte*, without prejudice.

## II. ANALYSIS
### A. *Denial of Default Judgment*

We review the district court's denial of a motion for default judgment for an abuse of discretion. See Harris v. St. Louis Police Dep't, 164 F.3d 1085, 1086 (8th Cir. 1998). Under the Federal Rules of Civil Procedure, such a motion may be granted only in those instances in which "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules." Fed. R. Civ. P. 55(a). If the party against whom a default judgment is sought has incurred no obligation under the Federal Rules of Civil Procedure to

-4-

"plead or otherwise defend" the action, the district court does not abuse its discretion in refusing to grant such relief. In fact, the converse is true. See Emery v. Hunt, 272 F.3d 1042, 1046 (8th Cir. 2001) ("A district court abuses its discretion if it commits an error of law."). Therefore, we must first inquire whether Defendants had an obligation to answer (*i.e.*, "to plead or otherwise defend") Norsyn's complaint.

In answering this question, we begin with the text of Federal Rule of Civil Procedure 81(c), which governs procedure in removed actions. Rule 81(c) addresses the factual scenario present in this case:

> In a removed action in which the defendant has not answered, the defendant shall answer or present the other defenses or objections available under these rules within 20 days after the receipt through service or otherwise of a copy of the initial pleading setting forth the claim for relief upon which the action or proceeding is based, or within 20 days after the service of summons upon such initial pleading, then filed, or within 5 days after the filing of the petition for removal, whichever period is longest.

Fed. R. Civ. P. 81(c). Of these three potential triggering dates, Norsyn emphasizes the last, arguing that default judgment was proper by virtue of Defendants' failure to answer within five days after filing the petition for removal. In essence, Norsyn argues that by invoking the removal jurisdiction of the district court, Defendants voluntarily assumed an obligation to respond to the complaint.[3]

---

[3]To the extent that Norsyn suggests that the mere act of removal constitutes a general appearance, thereby waiving any right to object to the lack of personal jurisdiction, we disagree. See Nationwide Eng'g & Control Sys., Inc. v. Thomas, 837 F.2d 345, 347-48 (8th Cir. 1998) ("Removal, in itself, does not constitute a waiver of any right to object to lack of personal jurisdiction. . . ."); see also 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1395 (2d ed. 1990). It is undisputed that Defendants did not file a single court document following removal, and therefore cannot be deemed to have entered a general appearance.

We find this argument without merit. The Seventh Circuit has considered an identical argument under facts materially indistinguishable from the present case. See Silva v. City of Madison, 69 F.3d 1368 (7th Cir. 1995), cert. denied, 517 U.S. 1121 (1996). The plaintiff in Silva filed a complaint against the City of Madison in Wisconsin state court. Shortly after receiving a copy of the complaint, yet never having been properly served under Wisconsin law, the City removed the action to the United States District Court for the Western District of Wisconsin. The City filed no court documents following removal, instead awaiting proper service by the plaintiff. Believing that the City had failed to answer within the time required by the Federal Rules of Civil Procedure, the plaintiff moved for default judgment. The district court denied plaintiff's motion.

On appeal, the Seventh Circuit affirmed the district court. It stated that a responsive pleading is only required to be filed within the latest of the three periods specified in Rule 81(c). Id. at 1371. Therefore, the simple act of removal could not trigger any obligation to answer, as such a reading would eviscerate the clause "whichever period is longest" from the plain text of Rule 81(c). Rather, the Seventh Circuit held that nothing short of proper service of process could trigger a defendant's obligation to answer under Rule 81(c), reasoning that "[r]equiring a responsive pleading before service is effected is at odds with a fundamental principle of federal procedure–that a responsive pleading is required only after service has been effected and the party has been made subject to the jurisdiction of the federal courts." Id. at 1376.

The Supreme Court has approved of the Seventh Circuit's ruling in Silva. See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 355 (1999) (stating that the Seventh Circuit "rightly determined" that the defendant's obligation to file an answer under Rule 81(c) did not arise until proper service of process). As interpreted, Rule 81(c) reflects the "longstanding tradition in our system of justice," id. at 350, that a defendant is under no duty to respond to the rules of a court unless

he is brought under its jurisdiction through the proper service of process. Therefore, Defendants could not have been held in default for failure to answer until properly served by Norsyn.

Whether a defendant has been properly served is a matter we review de novo. See Marshall v. Warwick, 155 F.3d 1027, 1030 (8th Cir. 1998). Norsyn points to January 30, 2002, as the date on which proper service was made on Defendants. It was on this date that Defendants received a copy of Norsyn's complaint, and were thus given actual notice of the pendency of the action. Since this event occurred prior to removal, we must determine whether it constituted sufficient service in accordance with the law of the jurisdiction in which the action was filed.[4] See Lee v. City of Beaumont, 12 F.3d 933, 936-37 (9th Cir. 1993) ("The issue of the sufficiency of service of process prior to removal is strictly a state law issue. . . ."). Norsyn argues that it properly served Defendants by mail in accord with South Dakota Codified Laws § 15-6-4(i). We disagree.

Section 15-6-4(i) provides that "a summons may be served upon a defendant in any action by mailing a copy of the summons, two copies of the notice and admission of service, conforming substantially to the form provided for in § 15-6-4(j), and a return envelope, postage prepaid, addressed to the sender." S.D. Codified Laws

---

[4]Norsyn appears to argue that the sufficiency of its service may also be adjudged under Federal Rule of Civil Procedure 4(c). We do not believe this to be a correct statement of the law. As Rule 81(c) demonstrates, the Federal Rules of Civil Procedure govern the procedural aspects of actions only after removal. See Fed. R. Civ. P. 81(c) ("These rules apply to civil actions removed to the United States district courts from the state courts and govern procedure *after removal*.)" (emphasis added). They do not create a two-tiered system of analysis requiring district courts to apply both state and federal procedural law. Further, the federal statute governing process after removal clearly contemplates that the sufficiency of service will only be determined in accord with federal law when the plaintiff makes an attempt at service following removal. See 28 U.S.C. § 1448. Norsyn did not do so in the present case.

§ 15-6-4(i). With the exception of mailing a copy of the summons, Norsyn completely failed to conform to explicit commands of § 15-6-4(i). Norsyn did not mail the requisite notice and admission of service, nor did it provide Defendants with a pre-paid return envelope. Delving deeper into South Dakota procedural law, Norsyn failed to file the requisite proof of service. Section 15-6-4(g) requires that a plaintiff serving process by mail file an "affidavit of mailing and admission of service." S.D. Codified Laws § 15-6-4(g)(5). The only proof Norsyn filed was an airbill receipt from the courier showing that "business documents" had been delivered to Defendants' corporate offices.

Norsyn seeks to avoid these several shortcomings in its attempted service of Defendants, arguing that it has substantially complied with the requirements of § 15-6-4(i). Norsyn's basic position is that the mere act of mailing a copy of the summons, coupled with actual receipt by Defendants, is tantamount to substantial compliance. While it is true that South Dakota law will excuse a technical defect in the service of process where the plaintiff has otherwise substantially complied with the appropriate rule, see Wagner v. Truesdell, 574 N.W.2d 627, 629 (S.D. 1998), mere notice of the action on the part of the defendant will not suffice. Id. Although Norsyn attempts to minimize the defects in service as "minor" and "technical," to accept such a position would distort these terms beyond recognition. The simple fact remains that Norsyn ignored § 15-6-4(i) in several material respects, and therefore cannot be relieved of its error under the guise of substantial compliance. See Marshall, 155 F.3d at 1031-32.

Because we believe that Defendants were never properly served, they consequently had no obligation to file an answer under Rule 81(c). See Silva, 69 F.3d at 1376. Therefore, the district court did not abuse its discretion in denying Norsyn's motion for default judgment.

B. *Dismissal Without Prejudice*

We review a district court's decision to dismiss a complaint for an abuse of discretion. See Marshall, 155 F.3d at 1030. Norsyn argues that the district court raised the issue of insufficiency of service *sua sponte*, and that this was an improper basis upon which to dismiss its complaint. Norsyn notes that unlike subject matter jurisdiction, which goes to the heart of a court's power to render a judgment, personal jurisdiction (including insufficiency of service) may be waived by the parties if not raised in a timely manner. See Fed. R. Civ. P. 12(h)(1). Norsyn's argument is controlled by Federal Rule of Civil Procedure 4(m), which states:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion *or on its own initiative after notice to the plaintiff*, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time. . . .

Fed. R. Civ. P. 4(m) (emphasis added). If "[a] district court has the power to dismiss a case for failure to comply with its rules," Marshall, 155 F.3d at 1030, Rule 4(m) is little more than an explicit textual recognition of that power under specified circumstances–when the plaintiff fails to comply with the 120-day period set forth therein.

We believe the actions of the district court were sufficient to put Norsyn on notice that its complaint was subject to dismissal. The district court devoted a substantial portion of its June 20th memorandum to several problems regarding the sufficiency of service. Norsyn addressed each of these problems not only in its memorandum of law, but also in oral argument before the district court. Under these circumstances, we cannot say that the district court's decision to dismiss the complaint without prejudice was an abuse of discretion. See Adams v. AlliedSignal Gen. Aviation Avionics, 74 F.3d 882, 887-88 (8th Cir. 1996) (stating that a district court does not abuse its discretion in dismissing a complaint without prejudice

"[w]hen counsel has ample notice of a defect in service, does not attempt an obvious correction, and chooses to defend the validity of the service attempted"); see also Edwards v. Edwards, 754 F.2d 298, 299 (8th Cir. 1985).

### C. *Rule 11 Sanctions*

We review a district court's issuance of sanctions under Rule 11 for an abuse of discretion.  See Black Hills Inst. of Geological Research v. S.D. Sch. of Mines and Tech., 12 F.3d 737, 745 (8th Cir. 1993).  "The district court's task is to ascertain whether the attorney met the objective reasonableness standard."  Id.  Norsyn argues that when the district court issues sanctions *sua sponte*, as in the present case, the attorney's conduct must be "akin to contempt of court."  Fed. R. Civ. P. 11 advisory committee's note (1993 Amendment).  While this standard has been adopted by some of our sister circuits, see In re Pennie & Edmonds LLP, 323 F.3d 86, 90 (2d Cir. 2003); Hunter v. Earthgrains Co. Bakery, 281 F.3d 144, 151 (4th Cir. 2002); United Nat'l Ins. Co. v. R&D Latex Corp., 242 F.3d 1102, 1115-16 (9th Cir. 2001), to date this circuit has stated simply that the *sua sponte* issuance of sanctions is to be reviewed with "particular strictness."  MHC Inv. Co. v. Racom Corp., 323 F.3d 620, 623 (8th Cir. 2003).

We need not now decide whether an attorney's conduct must be "akin to contempt of court" in order to justify a district court in issuing sanctions on its own initiative; nor need we scrutinize the litany of reasons set forth by the district court in this case to support its entry of sanctions against Johnston and Arendt.  Instead, we hold that the district court committed a clear abuse of its discretion when it ordered Johnston and Arendt jointly and severally liable for Defendants' attorney fees and costs.  Although Rule 11 places within the district court's arsenal the ability to award reasonable expenses and attorney fees, that sword may only be wielded upon the request of the opposing party.  See Fed. R. Civ. P. 11(c)(2) (permitting an award of all or some of attorney fees and costs incurred as a direct result of the violation "*if imposed on motion* and warranted for effective deterrence") (emphasis added); see

also <u>Nuwesra v Merrill Lynch, Fenner & Smith, Inc.</u>, 174 F.3d 87, 94 (2d Cir. 1999) ("By its terms, [Rule 11] thus precludes a court from awarding attorneys' fees on its own initiative.").

In this case, Defendants made no such request. Rule 11 states that a motion for sanctions "shall be made separately from other motions or requests." Fed. R. Civ. P. 11(c)(1)(A). Here, Defendants merely included within their response to the district court's June 20th memorandum a request that the district court "set[] a date for a hearing to determine the sanction that should be issued against plaintiff and/or attorney Johnston." Tellingly, Defendants acknowledged during the hearing on the Order to Show Cause that they did not file a separate motion for sanctions. Instead, they stated their belief that the district court raised the issue *sua sponte*. Having failed to file a formal motion for sanctions, Defendants were entitled to no monetary reward whatsoever.

### III. CONCLUSION

For the foregoing reasons, the judgment of the district court denying Norsyn's motion for default judgment and dismissing its complaint without prejudice is AFFIRMED. The judgment of the district court entering sanctions jointly and severally against Johnston and Arendt in the amount of $10,268.71 is VACATED.

_____